# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| GAIL ANN VAN KIRK, | Civil No. 1:11-cv-00621-BLW-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **DEFENDANTS' MOTION FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS COMPLAINT** (Docket No. 5) |
| BANK OF AMERICA CORPORATION; a corporation of unknown origin; BANK OF AMERICA, N.A. AS SUCCESSOR TO COUNTRYWIDE HOME LOANS, INC., a Delaware corporation; BAC HOME LOANS SERVICING, L.P., a limited partnership of unknown origin and a wholly-owned subsidiary of Bank of America, N.A.; NORTHWEST TRUSTEE SERVICES, INC., an Idaho Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a Delaware corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION, a Federally Chartered Corporation; and DOES 1-10 as individuals or entities with an interest in the property commonly known as:  11061 West Wagon Pass Street, Boise, Idaho 83709, | **REPORT AND RECOMMENDATION RE:**<br><br>**DEFENDANTS' MOTION TO DISMISS COMPLAINT** (Docket No. 4) |
| Defendants. | |

Currently pending before the Court are Defendants'[1] (1) Motion to Dismiss Complaint

(Docket No. 4), and (2) Motion for Judicial Notice in Support of Motion to Dismiss Complaint

---

[1] Defendants Bank of America, N.A., for itself and as successor by merger to BAC Home Loans Servicing, LP (erroneously sued as "Bank of America Corporation" and "Bank of America, N.A., as successor to Countrywide Home Loans, Inc."), Mortgage Electronic Registration Systems, Inc., and Federal National Mortgage Association brings these Motions. Defendant Northwest Trustee Services, Inc. joins in Defendants' Motion to Dismiss (*see* Docket No. 14).  For the sake of convenience, the Defendants will be referred to collectively as "Defendants."

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 1**

(Docket No. 5).  The Court finds that the decisional process would not be significantly aided by oral argument and, thus, the Court will decide this matter on the written motions, briefs, and record without oral argument.  *See* D. Idaho L. Civ. R. 7.1(d).  Having reviewed the record, and for the reasons discussed herein, the Court hereby enters a Memorandum Decision and Order as to Defendants' Motion for Judicial Notice in Support of Motion to Dismiss Complaint (Docket No. 5); the Court also hereby enters a Report and Recommendation as to Defendants' Motion to Dismiss Complaint (Docket No. 4).

## I.  BACKGROUND

Plaintiff alleges that, on or around June 13, 2007, she financed the purchase of real property located at 11061 West Wagon Pass Street, Boise, Idaho 83709 (the "Property") with a $308,000 loan originated by Mountain West Bank (who had the loan underwritten by Aegis Wholesale Corporation ("Aegis"), according to Plaintiff) memorialized in a promissory note (the "Note") and secured by a Deed of Trust.  *See* Pl.'s Compl., ¶¶ 1, 10-12 (Docket No. 1).[2]  The

---

[2] Defendants request that the Court take judicial notice of both the Note and the Deed of Trust (along with five court decisions).  *See* Mot. for Judicial Not. (Docket No. 5).  Plaintiff does not oppose the Court taking judicial notice of the Deed of Trust or court decisions (*see* Pl.'s Opp. to Mot. for Judicial Not., p. 2 (Docket No. 21)); therefore, Defendants' request is granted in this respect.  However, Plaintiff opposes the Court taking judicial notice of the Note, arguing that "[t]he authenticity of the Note is subject to reasonable dispute and is not a fact generally known within this Territorial Jurisdiction."  *Id.* at p. 5.  The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 (9th Cir. 2004); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (court may examine documents referred to in complaint, although not attached thereto, without transforming motion to dismiss into motion for summary judgment).  The Note, while not attached to Plaintiff's Complaint, *was* signed by Plaintiff on June 12, 2007 and *is* relied upon by Plaintiff in his Complaint.  In these respects, Plaintiff does not contend that the date, the amount, due date, or other terms of the Note are inaccurate – to be sure, the Deed of Trust (which Plaintiff does not object to (*see supra*)) specifically refers to the Note.  Instead, Plaintiff's objection resembles an iteration of her "produce the Note" theory already presented

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 2**

Deed of Trust names Aegis as the lender (later assigned to Countrywide Home Loans, Inc. ("Countrywide) which was later acquired by Bank of America Corporation ("BOFA CORP") and/or Bank of America, N.A. ("BOFA"), according to Plaintiff (*see id*. at ¶ 10)), Title One as the trustee, and the Mortgage Electronic Registration Systems, Inc. ("MERS") as "nominee for Lender and Lender's successors and assigns" and the beneficiary.  *See* Ex. B to Dina Aff. (Docket No. 5, Att. 3).

On August 8, 2011, MERS assigned its interest in the Deed of Trust to BOFA.  *See* Ex. C to Pl.'s Compl. (Docket No. 1, Att. 3).  On August 24, 2011, BOFA recorded an Appointment of Successor Trustee, appointing Northwest Trustee Services, Inc. ("Northwest") as successor trustee in place of Title One.  *See* Ex. B to Pl.'s Compl. (Docket No. 1, Att. 2).

After defaulting on her mortgage payments, Plaintiff received a Notice of Default on or around August 24, 2011.  *See* Pl.'s Compl., ¶ 15 (Docket No. 1); *see also* Ex. A to Pl.'s Compl. (Docket No. 1, Att. 1).  As of the date of the Notice of Default, Plaintiff had not made any payments since March/April 2011 and was approximately $4,434.82 in arrears.  *See* Ex. A to Pl.'s Compl. (Docket No. 1, Att. 1).  Plaintiff's failure to cure her default led to the issuance of a Notice of Trustee's Sale on September 6, 2011.  *See* Ex. F to Pl.'s Compl. (Docket No. 1, Att. 6). To date, no sale has occurred.

On December 12, 2011, Plaintiff initiated the instant action, asserting claims (and seeking damages) for (1) violation of Fair Debt Collection Practices Act ("FDCPA"), (2)

---

within her Complaint.  With all this in mind, the undersigned finds that Plaintiff's unwillingness to admit the authenticity of the Note to be inconsequential, particularly when considering the related arguments raised within Defendants' Motion to Dismiss.  Accordingly, even when assuming the Note's applicability to the instant motion, Defendants' Motion for Judicial Notice in Support of Motion to Dismiss Complaint (Docket No. 5) is granted.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 3**

declaratory relief, (2) mail fraud, (4) fraud, (5) breach of fiduciary duty and good faith and fair dealing, and (6) intentional infliction of emotional distress. *See* Pl.'s Compl. (Docket No. 1). Additionally, Plaintiff requests that the Court (1) require certain Defendants to produce the original Note in Court, (2) determine the Defendants' interest in the Property, and (3) award Plaintiff her costs and attorneys' fees. *See id*. Generally, Plaintiff contends that Defendants lacked the authority to foreclose on the Property, owing to alleged failures within the process by which the debt was securitized. Defendants now move to dismiss under FRCP 12(b)(6).

## II. <u>REPORT</u>

The gist of Plaintiff's Complaint seems to be that Defendants' alleged fraud, coupled with the improper securitization of her mortgage, clouded title to the Property. More particularly, part and parcel with her identified causes of action, Plaintiff alleges that (1) MERS did not have any valid interest in the Deed of Trust and, thus, lacked any authority to assign its interest, and (2) BOFA did not have the authority to appoint Northwest as successor trustee or to carry out a non-judicial foreclosure sale. *See* Pl.'s Compl. ¶¶ 17-23 (Docket No. 1). Plaintiff also points to other alleged irregularities that she believes "cast serious doubt on the legitimacy and legal effectiveness of the pre-foreclosure documents." *See id*. at ¶ 33 (referring to Pl.'s Compl. at ¶¶ 30-32). Plaintiff filed this action "to determine the interests of BOFA and [Federal National Mortgage Association] ("Fannie Mae")[3] in the Property, while also requesting that certain Defendants be required to produce the original Note. *See id*. at ¶¶ 24, 34, & 1 (at p. 27).

---

[3] Plaintiff contends that Fannie Mae is the true, current beneficiary of the Deed of Trust. *See* Pl.'s Compl, ¶¶ 25-26 (Docket No. 1) ("[Plaintiff] alleges that Fannie Mae in fact 'owned the loan' prior to and at the time the purported Assignment of Deed of Trust, Appointment of Successor Trustee, and Notice of Default were signed and recorded in August 2011.").

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 4**

**A.      Legal Standard for Motions to Dismiss**

FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by an FRCP 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that underlie the decision in *Twombly*.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *See id*.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id*. at 679.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 5**

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff.  Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery.  *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way, that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts.").

A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment."  *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) (issued two months after *Iqbal*).[4]  The Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  The issue is not whether the plaintiff will prevail but whether he "is entitled to offer evidence to support the claims."  *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2008) (citations omitted).

---

[4]  The Court has some concern about the continued vitality of the liberal amendment policy adopted in *Harris v. Amgen*, based as it is on language in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), suggesting, in part, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim . . . ."  Given *Twombly* and *Iqbal's* rejection of the liberal pleading standards adopted by *Conley*, a question arises whether the liberal amendment policy of *Harris v. Amgen* still exists.  Nevertheless, the Circuit has continued to apply the liberal amendment policy even after dismissing claims for violating *Iqbal* and *Twombly*.  *See, e.g.*, *Market Trading, Inc. v. AT&T Mobility, LLC*, 2010 WL 2836092 (9th Cir. July 20, 2010) (not for publication).  Accordingly, the Court will continue to employ the liberal amendment policy.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 6**

**B.      Plaintiff's FDCPA Claim**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C.A. § 1692.  In furtherance of this goal, the FDCPA requires and prohibits certain activities by "debt collectors" that are done "in connection with the collection of any debt."  15 U.S.C. §§ 1692c (prohibits certain communications), 1692d (prohibits harassment or abuse), 1692e (prohibits false or misleading representations), 1692f (prohibits unfair practices) & 1692(g) (requiring validation of debts).

Generally, non-judicial foreclosure actions do not constitute "debt collection activity" under the FDCPA.  *See Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("[The] activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the" FDCPA).  However, in *Armacost v. HSBC Bank USA*, 2011 WL 825151 (D. Idaho 2011), this Court's U.S. Magistrate Judge Larry M. Boyle found a narrow exception to the general rule within section 1692f(6) of the FDCPA.  *See id* at *6 ("Accordingly, to the extent Plaintiff's Complaint attempts to make a claim under the FDCPA other than under section 1692f(6), Defendant's motion to dismiss should be granted.").  Section 1692f(6) of the FDCPA reads:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section . . . .
>
>> (6)      Taking or threatening to take any non-judicial action to effect dispossession or disablement of property if –

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 7**

> (A)     there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B)     there is no present intention to take possession of the property; or
>
> (C)     the property is exempt by law from such dispossession or disablement.

15 U.S.C.A. § 1692f(6).

Plaintiff does not specify which part of section 1692f she claims Defendants violated; indeed, she lists only section 1692 generally. *See* Pl.'s Compl. at p. 7 (Docket No. 1). Broadly construing both the allegations of her Complaint and the FDCPA (while recognizing Plaintiff's explicit reference within her Complaint to *Armacost* and the "exception" identified therein (*see id* at ¶ 37)), the Court is of the view that Plaintiff's general allegations concerning Defendants' standing to enforce the Note, could equate to a claim that Defendants took "non-judicial action to effect dispossession or disablement of property . . . [with] no present right to possession of the [P]roperty claimed as collateral through an enforceable security interest . . . ." *Accord Armacost*, 2011 WL 825151 at *7; *see also* 15 U.S.C.A. § 1692f(6)(A); Pl.'s Compl., ¶ 43(e) (Docket No. 1).[5]

---

[5]  To be sure, there is nothing in Plaintiff's Complaint that suggests that she is alleging that Defendants "t[ook] or threaten[ed] to take any non-judicial action to effect dispossession or disablement of property [with] . . . no present intention to take possession of the [P]roperty [or with] the [P]roperty [being] exempt by law from such dispossession or disablement." *See* 15 U.S.C.A. §§ 1692f(6)(B) & (C). Assuming *arguendo* that Plaintiff is making some *other* type of claim under the FDCPA, *Armacost* (even assuming its continued applicability) would seem to apply to dismiss those claims. *See supra*. Additionally, it must be said that, with respect to *Armacost's* discussion of the FDCPA, Judge Boyle denied the defendant's motion to dismiss because it could not be determined as a matter of law that the plaintiff's complaint fails to state a claim for relief based on the defendant's lack of possession of the promissory note. *See* 2011 WL 825151 at *8-12. Since then, the Idaho Supreme Court in *Trotter v. Bank of New York Mellon, et al*, 2012 WL 206004/975493 (Idaho 2012) outlined the extent of the procedural requirements of Idaho's non-judicial foreclosure statute, while rejecting the "produce the note" theory. *See id* at *3.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 8**

Responding to Plaintiff's allegations that they violated the FDCPA, Defendants argue

that (1) Defendants are not "debt collectors" under the FDCPA and, regardless, (2) Plaintiff fails

to allege any conduct in violation of the FDCPA.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss,

pp. 4-7 (Docket No. 4, Att. 1).  The undersigned agrees with Defendants in these respects and,

therefore, recommends the dismissal of Plaintiff's FDCPA claim.

        1.     <u>Defendants Arguably Are Not Debt Collectors Under the FDCPA</u>

According to Plaintiff, "Defendants have been, and are, debt collectors as the term is

defined in 15 U.S.C. section 1692a(6)."  *See* Pl.'s Compl., ¶ 38 (Docket No. 1).[6]  However,

under the FDCPA, a debt collector is a person who uses an instrumentality of interstate

commerce or the mails in a business which has the principal purpose of collecting debts, or who

regularly collects debts owed to another.  *Fitzgerald v. PNC Bank*, 2011 WL 1542138, *3 (D.

Idaho 2011) (citing 15 U.S.C. § 1692a(6)).  Importantly, however, a debt collector does *not*

include "any person collecting or attempting to collect any debt owed or due or asserted to be

owed or due another to the extent such activity . . . concerns a debt which was not in default at

the time it was obtained by such person."  *Fitzgerald*, 2011 WL 1542138 at *3 (quoting 15

U.S.C. § 1692a(6)(F)).  To this end, courts – including this Court – have concluded that "lenders

and mortgage companies are not 'debt collectors' within the meaning of the FDCPA."  *Cherian

v. Countywide Home Loans, Inc.*, 2012 WL 2865979, *4 (D. Idaho 2012) (citing *Ines v.*

---

    [6] Although Plaintiff generally references "Defendants" within the body of her claim for violations of the FDCPA, within her Prayer for Relief, she specifically lists only BOFA, BAC Home Loans Servicing, L.P. ("BAC") (BOFA's pre-merger predecessor), and Northwest as Defendants vis à vis that claim.  *See* Pl.'s Compl., p. 27 (Docket No. 1).  The Court understands these entities to be the applicable Defendants for the purposes of this discussion.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 9**

*Countrywide Home Loans, Inc.*, 2008 WL 2795875, *3 (S.D. Cal. 2008) (citing *Williams v.*

*Countrywide*, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) ("Mortgage companies collecting debts

are not 'debt collectors.'"))).

      With this definition of debt collector in mind, Plaintiff alleges that before her default on

the debt, Fannie Mae "owned the loan." *See* Pl.'s Compl., ¶ 26 (Docket No. 1); *compare with* 15

U.S.C. § 1692a(6)(F).  BAC and its successor, BOFA, operated as the loan servicer (*see* Exs. E

& F to Pl.'s Compl. (Docket No. 1, Atts. 5 & 6)), thus exempting them from the FDCPA.  *See*

*Cherian*, 2012 WL 2865979 at *4 ("Countrywide is the lender, U.S. Bank is the lender's

successor, and Bank of America is the loan servicer – none of which qualify as 'debt collectors'

under the FDCPA.") (citing *Caballero v. Ocwen Loan Serv.*, 2009 WL 1528128, at *1 (N.D. Cal.

2009)); *see also Fitzgerald*, 2011 WL 1542138 at *3 (stating that FDCPA's legislative history

"suggests that a mortgagee and its assignee, including mortgage servicing companies, are not

debt collectors under the FDCPA when the debt is not in default at the time the mortgage-holder

acquires the debt."); *but see* Ex. E to Pl.'s Compl. (Docket No. 1, Att. 5) (noting that BOFA "is

considered a debt collector" under FDCPA).

      Furthermore, Northwest, as the successor trustee, has no ownership interest in the Note

and, therefore, is otherwise exempt from the FDCPA.  *See Cherian* 2012 WL 2865979 at *4

("ReconTrust, as the successor, has no ownership interest in the Note and no claim be stated

against it under the FDCPA."); *see also Jacobson v. Balboa Arms Drive Trust No. 5402 HSBC*

*Financial Trustee*, 2011 WL 3328487, *5 (S.D. Cal. 2011) (defining trustees as "merely

'middlemen' in the foreclosure process" while dismissing FDCPA claim); *but see* Ex. F to Pl.'s

Compl. (Docket No. 1, Att. 6) (identifying September 6, 2011 letter as "Notice Under Fair Debt

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 10**

Collection Practices Act" and noting that "[p]ursuant to and in compliance with the Fair Debt Collection Practices Act . . . [w]e are attempting to collect a debt and any information we obtain will be used for that purpose.").

Simply put, even considered most favorably to Plaintiff, her Complaint does not contain sufficient factual allegations to show that BOFA, BAC, or Northwest are debt collectors or have engaged in the collection of a debt within the meaning of the FDCPA. For this reason, it is recommended that Plaintiff's FDCPA claim against these Defendants be dismissed.

 2. Even If Defendants Are Debt Collectors, Plaintiff Fails to Allege Any Conduct that Violated the FDCPA

Sections 1692e(2)(a) and 1692e(1) of the FDCPA prohibit "any false, deceptive, or misleading representation . . . in connection with the collection of any debt." 15 U.S.C.A. § 1692e. For example, a debt collector may not falsely represent the "character, amount, or legal status of any debt" or use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* Any misrepresentation must be material, in that it would likely mislead "the least sophisticated debtor." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). The FDCPA is a strict liability statute that "makes debt collectors liable for violations that are not knowing or intentional." *Id.* at 1030. Additionally, the FDCPA is a remedial statute and must be construed liberally in favor of the debtor. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006).

Contending that Defendants are debt collectors (*see supra*), Plaintiff argues that they violated the FDCPA because (1) they misrepresented the legal status of the debt by identifying

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 11**

two different creditors in two separate pieces of correspondence (*see* Pl.'s Compl., ¶ 39 (Docket No. 1)), (2) Northwest "lacks power of sale under Idaho law as a trustee of trust deeds" (*see id.* at ¶ 40), (3) Northwest "committed fraud through the use of forged documents, containing misrepresentations" (*see id.* at ¶ 42), and (4) such foreclosures also include unfair and unconscionable actions generally (*see id.* at ¶ 43).  Even when assuming that Defendants are debt collectors under the FDCPA, these allegations are insufficient to state a claim that Defendants violated the FDCPA.

First, while it is true that, on two different occasions, Plaintiff received correspondence identifying two different creditors (*see* Exs. E & F to Pl.'s Compl. (Docket No. 1, Atts. 5 & 6)), it cannot be said that such a discrepancy amounts to a misleading representation of the character, amount, or legal status of Plaintiff's debt.  *See, e.g.*, *Jeffrey v. Gordon*, 2011 WL 2134050, *3 (D. Or. 2011) (granting defendant's motion for summary judgment on FDCPA claim, concluding that false statements concerning creditor's identification were not material because "no rational trier of fact could conclude that defendant's technically false representation of the name of the creditor in this circumstance was a violation of the FDCPA.").  Further, within the September 6, 2011 Notice from Northwest, Plaintiff was given 30 days to request "the name and address of the original creditor under the Loan . . . ."  *See* Ex. F to Pl.'s Compl. (Docket No. 1, Att. 6).  If Plaintiff was indeed confused that different creditors were attempting to collect more than one debt, she could have sought clarification; based upon the existing record, she did not.  In short, under the circumstances presented by the record thus far, the undersigned is not convinced that any potentially-false representation as to the creditor's name – either Fannie Mae or BOFA in this instance – amounts to a misleading representation in connection with the collection of any

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 12**

debt.  Otherwise, *any* error within similar documents could somehow be characterized by a Plaintiff as a violation of the FDCPA – without any question as to the existence of an outstanding debt and/or the amount owed.  The Court is not prepared to make such a sweeping finding here

Second, with respect to Northwest's powers, Defendants correctly point out that, pursuant to the Deed of Trust, Northwest is entrusted with the power of sale.    *See* Ex. B to Dina Aff. (Docket No. 5, Att. 3) ("For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the [Property].");  *but see infra*.

Third, where Plaintiff alleges that "Northwest knowingly committed fraud through the use of forged documents, containing misrepresentations," she must do so with specificity and particularity.  *See* FRCP 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.");  *see also infra* (discussing shortcomings in Plaintiff's robo-signing/forgery/fraud arguments).  Plaintiff's unadorned allegations have insufficient factual support to state a plausible claim for relief in this respect.

Finally, Plaintiff's identified list of other purportedly "unfair and unconscionable actions" is a blanket list of conclusory allegations with no interconnected factual particulars to tie Defendants' actions with the allegedly offensive conduct.   For example, Plaintiff contends that foreclosures under Idaho law improperly (1) "[a]dvertis[e] . . . plaintiff's property for sale in order to coerce payment of debts"; (2) "threat[en] to take action, to wit, sale of properties, which defendant Northwest may not legally take"; (3) "represent[ ] that notices of default and sale, and trustee's deeds issued by Northwest are valid and constitute legal process"; (4) "use . . . false representations and deceptive means to collect debts, insofar as such notices and deeds issued by

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 13**

Northwest are of no legal force and effect and contain false information about the true owner/creditor of the loan"; and (5) "take[ ] and threaten[ ] to take non-judicial action to effect dispossession or disablement of property by one having no present power to dispose of such property." *See* Pl.'s Compl., ¶ 43 (Docket No. 1). These statements recite the sort of conduct generally understood to be actionable under the FDCPA, but contain no factual allegations tethering such violations to Defendants' conduct. Without more, these allegations cannot support a claim under the FDCPA.

For the above-referenced reasons, the undersigned hereby recommends that Plaintiff's claim under the FDCPA be dismissed.

## C.    Plaintiff's Declaratory Relief Claim

Within her Complaint, Plaintiff specifically requests (1) a determination of who holds the Note and beneficial interest in the Deed of Trust; (2) a determination of whether MERS is a valid beneficiary and, therefore, whether BOFA has standing to initiate foreclosure proceedings; and (3) a determination that Defendants failed to properly record an assignment to Fannie Mae. *See* Pl.'s Compl., ¶ 45 (Docket No. 1).[7] In the Court's mind, the common denominator to these requests for declaratory relief is an attack on the securitization process generally.

### 1.    Securitization of the Note Generally Does Not Impact the Right to Foreclose

Plaintiff appears to allege that, when MERS included her loan in a collateralized debt obligation/mortgage-backed security, MERS lost any interest in the Note and Deed of Trust and,

---

[7] Plaintiff then goes on to make a number of different arguments as if writing a brief, not a pleading. *See* Pl.'s Compl., ¶ 49(A)-(F). These arguments/allegations seem to raise additional issues that this Report and Recommendation attempts to address.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 14**

as a result, its and BOFA's authority to appoint a successor trustee or initiate a non-judicial foreclosure sale was extinguished.  *See* Pl.'s Compl, ¶¶ 17-23 (Docket No. 1).

This is not a new battlefield.  Several courts have rejected various theories that "securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach."  *West v. Bank of America*, 2011 WL 2491295, *2 (D. Nev. 2011); *see also Washburn v. Bank of America*, 2011 WL 7053617, *4-5 (D. Idaho 2011) (citing *Beyer v. Bank of America*, 800 F. Supp. 2d 1157 (D. Or. 2011) (rejecting argument that trust deed is void when separated from promissory note); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039 (N.D. Cal. 2009) (rejecting plaintiff's theory that defendants "lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"); *Chavez v. California Reconveyance Co.*, 2010 WL 2545006 (D. Nev. 2010) ("The alleged securitization of Plaintiffs' Loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course.")).  More recently, the Ninth Circuit, in explaining that MERS is an electronic database that tracks the transfers of the beneficial interest in home loans, held that use of the MERS system does not eliminate a party's right to foreclose – even accepting the premise that use of MERS splits the note from the deed.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).  Nothing in Plaintiff's Complaint or opposition to Defendants' Motion to Dismiss persuades this Court to depart from the reasoning in these decisions.

Moreover, from a more practical standpoint, no matter which entity is actually instituting foreclosure proceedings, only one entity is doing so, and Plaintiff does not deny that she is in default under the loan documents.  If Plaintiff attempted to cure her default, she has accurate

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 15**

information about where to send her payments and what amount to pay.  Plaintiff alleges no facts

suggesting that any Defendant has already collected any amount in arrears or that any Defendant

is attempting to collect from her a second time.  Rather, all the evidence shows that Plaintiff is

behind on her loan payments.  She defaulted on her loan obligation and the documents she

signed in connection with obtaining the loan state that the Property may be sold in a non-judicial

foreclosure sale under these circumstances.  "Securitization of the loan does not discharge

Plaintiff's clear contractual obligation to repay the loan."  *Cherian*, 2012 2865979 at 3.

       2.    <u>MERS is a Proper Beneficiary and Has Standing to Foreclose</u>

Plaintiff argues that MERS is a sham beneficiary and lacks standing to enforce the Note.

*See* Pl.'s Compl. ¶ 49(A) Docket No. 1); *see also* Pl.'s Opp. to Mot. to Dismiss, pp. 10-17

(Docket No. 20, Att. 1).  This position has been rejected repeatedly in multiple jurisdictions,

including this Court.  *See, e.g.*, *Cherian* 2012 WL 2865979 at *4 (citing *Hobson*, 2012 WL

505917 at *5).  In *Hobson*, relying in part on the Idaho Supreme Court decision in *Trotter*, this

Court concluded that MERS had the authority to assign its beneficial interest in the Deed of

Trust to the foreclosing bank.  *See Hobson*, 2012 WL 505917 at *5.[8]

Additionally, the Ninth Circuit in *Cervantes* recently rejected the "sham beneficiary"

argument raised here by Plaintiff.  In *Cervantes*, the plaintiffs argued that MERS was not a true

---

[8]  Regardless, the fact that MERS is named as the beneficiary does not change the rights
or obligations of Plaintiff with regard to the Property.  Plaintiff is still required to meet her
obligations under the loan and, if she fails to do so, the beneficiary of the Deed of Trust may
initiate foreclosure, through the trustee, following the procedures set forth by Idaho's statutes.
*See, e.g.*, *Washburn*, 2011 WL 7053617 at *6 (in quiet title context, this Court stating that,
"[a]lthough this may have created 'a complex payment arrangement for receiving the benefit of
the obligation,' it 'creates no practical harm' for [the plaintiff] . . . .) (quoting *Beyer*, 800 F.
Supp. 2d at 1162).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 16**

beneficiary, but rather a sham beneficiary without the authority to carry out a foreclosure sale. *See Cervantes*, 656 F.3d at 1039.  Plaintiff makes the same argument here.  S*ee* Pl.'s Compl., ¶ 49(A)); *see also*  Pl.'s Opp. to Mot. to Dismiss, p. 10 (Docket No. 20, Att. 1) ("Further, MERS is merely an electronic registry used by the lending institutions for the sole purpose of avoiding filing fees by repetitively allowing internal assigning, transferring and gambling with Trust Deeds; a sham beneficiary without the authority, or legal interest to carry out foreclosures in Idaho.").  However, in *Cervantes*, the Ninth Circuit held that, pursuant to the loan documentation (the terms to which, like here, the plaintiffs assented), MERS was acting solely as "a nominee for Lender and Lender's successors and assigns," holds "only legal title to the interest granted by the borrower in this security instrument," and that MERS had "the right to foreclose and sell the property."  *See Cervantes*, 656 F.3d at 1039 ("[i]n light of the explicit terms of the standard deed signed by Cervantes, it does not appear that the plaintiffs were misinformed about MERS's role in their home loans.").

Plaintiff fails to cite any *controlling* authority supporting her position that MERS is a sham beneficiary.  Further, Plaintiff has not alleged any facts distinguishing this case from *Cherian*, *Hobson*, *Trotter*, or *Cervantes*.  Consistent with these decisions, then, the Court concludes that MERS had the authority to assign its beneficial interest in the Deed of Trust.

3.    Defendants Are Not Required to Produce the Note

Plaintiff's Complaint requests that Defendants be required to produce the original Note. *See* Pl.'s Compl., ¶ 24, 49(B), & 1 (at p. 27).  Her opposition to Defendants' Motion to Dismiss reinforces her argument, stating in no uncertain terms that "there are serious doubts concerning ownership of the loan[,] . . . [and] . . . it is appropriate, and it should be required, that the original

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 17**

note be produced in court to establish that at least someone is entitled to enforce the loan." *See* Pl.'s Opp. to Mot. to Dismiss, pp. 18-20 (Docket No. 20, Att. 1).  However, the Idaho Supreme Court recently rejected this argument, holding that "a trustee may initiate non-judicial foreclosure proceedings on a deed of trust without first proving ownership of the underlying note . . . ." *Trotter v. Bank of New York Mellon*, 275 P.3d at 862.  Accordingly, under Idaho law on this record, the Defendants are not required to produce the promissory note.

4.   Northwest *May* Be a Valid Trustee, but that is Not Apparent as Matter of Law on this Record

Assuming MERS is not a valid beneficiary, Plaintiff argues that it necessarily "lacked ability to transfer the beneficial interest to BOFA" and, "[t]herefore, BOFA also does not have the authority to appoint Northwest as the trustee." *See* Opp. to Mot. to Dismiss, p. 21 (Docket No. 20, Att. 1).  However, as discussed above, MERS *is* a valid beneficiary.  *See supra*.  As a valid beneficiary, MERS properly assigned its interest in the Deed of Trust to BOFA which, in turn, appropriately appointed Northwest successor trustee.  *See* Exs. B & C to Pl.'s Compl. (Docket No. 1, Atts. 2 & 3).[9]

This assumes, however, that BOFA (and not some other entity) had the beneficial interest necessary in order to appoint a successor trustee.  In this respect, Plaintiff contends that BOFA did not have the authority to appoint Northwest as successor trustee because the true owner/creditor of the loan is Fannie Mae.  *See* Pl.'s Compl., ¶ 49(C) (Docket No. 1).  The record

---

[9]  Plaintiff's characterization of Mary Ann Heirman and Vonnie McElligott as "mere robo-signers" with no authority to sign either the Assignment of Deed or Trust or the Appointment of Successor Trustee (*see* Exs. B & C to Pl.'s Compl. (Docket No. 1, Atts. 2 & 3)) is unsupported by any allegations of fact and, therefore, cannot operate to buttress her claim for declaratory relief in this respect.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 18**

in this respect is unclear, particularly when considering that the record appears to reflect (in at least two instances) that Fannie Mae maintains *some* interest in the Property.  *See* Exs. D & E to Pl.'s Compl. (Docket No. 1, Atts. 4 & 5).  The extent of that interest, or when, exactly, such an interest came into focus, is equally unclear and not resolved by the record or the arguments raised in Defendants' briefing.

This lack of clarity prevents the undersigned from concluding, as a matter of law, that Northwest is a valid trustee.  While that may indeed be the case, at this point, it can only be said that, under the circumstances reflected by record and the parties' arguments, Northwest may (or may not, as the case may be) be a valid trustee.

> 5. <u>Defendants *May Have* Properly Recorded Title and Assignment Documents in Compliance with Idaho's Foreclosure Statutes, but that is Not Apparent as a Matter of Law on this Record</u>

Plaintiff and Defendants agree that, according to Idaho Code section 45-1505(1), "[t]he trustee may foreclose a trust deed . . . if: The trust deed, any assignments of the trust deed by the beneficiary, and any appointments of successor trustee are recorded in mortgage records . . . ."  *See* Pl.'s Compl., ¶ 49(D) (Docket No. 1); *see also* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 12 (Docket no. 4, Att. 1); Pl.'s Opp. to Mot. to Dismiss, p. 21 (Docket No. 20, Att. 1).  With this statute in mind, Plaintiff argues that, "[d]ue to the nature of MERS electronic registration system," the Deed of Trust was "internally assigned to new owners/trusts or [Fannie Mae] without ever being recorded at the county recorders office where the Property is located."  *See* Pl.'s Compl., ¶ 49(D) (Docket No. 1).

The Assignment of Deed of Trust was recorded on August 24, 2011 as Instrument No. 111068570 and the Notice of Default was recorded thereafter as Instrument No. 111068572.  *See*

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 19**

Exs. A & C to Compl. (Docket No. 1, Atts. 1 & 3).  On its face, it would seem that Defendants

complied with Idaho's foreclosure statutes by recording the Deed of Trust's assignment.  *See*

*Cherian*, 2012 WL 2865979 at *3 & *6 (in addition to characterizing plaintiff's allegations in

this respect as "purely conclusory and speculative," finding recording of Assignment of Deed of

Trust in context of plaintiff's contemporaneous motion to amend).  However, as with the

questions surrounding whether Northwest is a valid trustee (*see supra*), Fannie Mae's role in this

action "muddies the waters" on the issue of whether Defendants ultimately satisfied their

recording obligations.  *See, e.g.*, Pl.'s Compl., ¶ 49(D) (Docket No. 1) ("There are no recorded

transfers of the Deed of Trust from MERS or BOFA to the present owner/creditor Fannie Mae . .

. .").  Defendants' briefing does not resolve this disputed issue.  *See* Defs.' Mem. in Supp. of

Mot. to Dismiss, pp. 12-13 (Docket No. 4, Att. 1) (arguing that Idaho Code section 45-1505

"pertains to conditions precedent to initiation of foreclosure proceedings, so does not support

Plaintiff's claim that foreclosure proceedings were improper.").

Again, this lack of clarity prevents the undersigned from concluding, as a matter of law,

that Defendants properly recorded title and assignment documents in compliance with Idaho's

foreclosure statutes.  While such proof may ultimately come forward, at this point it can only be

said that, under the circumstances reflected by the record and the parties' arguments, Defendants

may (or may not, as the case may be) have complied with Idaho law in this respect.

6.    Plaintiff's Idaho Consumer Protection Act ("ICPA") "Claim"

The ICPA prohibits unfair methods of competition and unfair or deceptive acts or

practices in the conduct of trade or commerce within the State of Idaho.  *See State ex rel. Kidwell*

*v. Master Distributors, Inc.*, 615 P.2d 116, 122 (Idaho 1980); *see also* I.C. § 48-603(E).  Though

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 20**

raised in the context of a declaratory action, Plaintiff argues that Defendants violated the ICPA. *See* Pl.'s Compl., ¶ 49(E) (Docket No. 1) (arguing generally that "Defendants and their agents engaged in unfair and deceptive foreclosure practices violating Idaho statutes."). Plaintiff does not specify which section of the ICPA Defendants violated and the allegations fit only, if at all, in the "catchall" provision which prohibits "[e]ngaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer." I.C. § 48-603(17). The Court finds that Plaintiff's allegations fail to state a claim or violation of the ICPA.

The Court can reasonably infer that, despite occasionally referencing "Defendants" when alleging the claim, Plaintiff's intend to assert the claim against only BOFA and Northwest. *See* Pl.'s Compl., ¶ 49(E) ("BOFA and Northwest violated I.C. § 48-601 . . . .  In the present case, BOFA and Northwest have arguably violated the ICPA . . . ."). Yet, as to BOFA, the substance of such allegations is too scant, vague, and conclusory to meet the pleading requirements of *Iqbal* and *Twombly*. For example, Plaintiff's Complaint does not specifically allege that BOFA committed any act that is considered unfair or deceptive under the ICPA, or what harm or damage those acts caused to Plaintiff. Indeed, Plaintiff focuses entirely upon Northwest's conduct. For this reason, Plaintiff fails to state a claim against BOFA upon which relief may be granted under the ICPA.

Irrespective of the insufficiency of Plaintiff's allegations against BOFA, Plaintiff has not stated a claim upon which relief may be granted against Northwest. To have standing under the ICPA, "'the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfair or deceptively.'" *Sykes v. Mortgage Electronic Registration Systems, Inc.*, 2012 WL 914922, *8 (D. Idaho 2012) (quoting *Taylor v. McNichols*, 243 P.3d 642, 661 (Idaho

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 21**

2010) (citing *Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982); I.C. § 48-608(1)

("Any person who purchases or leases goods or services and thereby suffers . . . ."))).  For this

reason, Plaintiff fails to state a claim against Northwest upon which relief may be granted under

the ICPA.

       7.     <u>Idaho Code Section 45-1506C was Enacted After the Events in Question.</u>

Plaintiff alleges that Northwest violated Idaho Code section 45-1506C "by failing to

provide adequate, detailed supplemental notice as required under the law, especially regarding

the opportunity to request loan modification assistance . . . ."  *See* Pl.'s Compl., ¶ 49(F) (Docket

No. 1).  As Defendants point out, however, this Code section became operative as of September

1, 2011 – after the Notice of Default was recorded on August 24, 2011.  *See* Defs.' Mem. in

Supp. of Mot. to Dismiss, pp. 13-14 (Docket No. 4, Att. 1).  Plaintiff offers no response in her

opposition to Defendants' Motion to Dismiss.  Therefore, any claim concerning Northwest's

violation of Idaho Code section 45-1506C should be dismissed.

**D.**     **Plaintiff's Mail Fraud Claim**

In support of her mail fraud claim, Plaintiff references 18 U.S.C. § 1341, a mail fraud

criminal statute.  *See* Pl.'s Compl., ¶ 51 (Docket No. 1).  Plaintiff has not provided any factual

allegations that would support such a cause of action; moreover, there is nothing in the law

showing that a private cause of action may be brought upon this section.  *See Heitman v. Stone*

*Creek Funding Corp.*, 2007 WL 3333279, *3 (D. Idaho 2007).

To the extent Plaintiff is actually claiming that Defendants violated RICO – in particular,

18 U.S.C. § 1962(c) (*see* Pl.'s Compl., ¶ 52 (Docket No. 1)) – that claim is also unsustainable.

18 U.S.C. § 1962(c) makes it unlawful for "any person employed by or associated with [an]

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 22**

enterprise . . . to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a patter of racketeering activity or collection of unlawful debt."  To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).  Further, "[t]o have standing under civil RICO, [a plaintiff] is required to show that the racketeering activity was both a but-for cause and a proximate cause of his injury."  *See Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873 (9th Cir. 2010) (citing *Holmes v. Securities Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).  For RICO purposes, proximate causation requires "some direct relation between the injury asserted and the injurious conduct alleged."  *See Holmes*, 503 U.S. at 268; *see also Bridge v. Phoenix Bond Indem. Co.*, 553 U.S. 639, 655 (2008) (explaining that finding of proximate causation for RICO claims requires that "particular emphasis" be placed on "demand" for direct relation between asserted injury and alleged RICO violation) (citing *Holmes*, 503 U.S. at 268; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.")).

Here, the basis of the RICO violation, according to Plaintiff, is Defendants' "use[ ] of robo-signing forgery mills to pump out millions of fraudulent documents, through the mail, containing material misrepresentations . . . ."  *See* Pl.'s Compl., ¶ 52 (Docket No. 1); *see also id.* at ¶ 53 ("Defendants created the Notice of Default, Assignment of Deed of Trust, and Appointment of Successor Trustee, which contained false and misleading representations used in attempting to obtain payments from Plaintiff and to wrongfully foreclose upon, obtain, and sell

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 23**

Plaintiff's property.").[10]  Such cursory allegations are threadbare at best as to the particular

nature of alleged fraud or the pattern of racketeering activity that Defendants allegedly engaged

in or the existence of any RICO enterprise.  Absent specific allegations on these points, Plaintiff

cannot sustain a civil RICO claim.  *See, e.g.*, *Clark v. Countrywide Home Loans, Inc.*, 732 F.

Supp. 2d 1038, 1046 (E.D. Cal. 2010) ("Plaintiff essentially alleges that every defendant was

aware that the notice of default was invalid and that every defendant either participated in or

rendered substantial assistance in the issuance of the invalid notice.  These allegations are not

remotely sufficient to support a civil RICO violation.").

Additionally, the record in this case does not reflect that any foreclosure sale has

occurred with respect to the Property – as of the date that Defendants' Motion to Dismiss was

---

[10]  Indeed, throughout her Complaint, Plaintiff contends that these forged and fraudulent documents, part and parcel with the securitization process, form the basis for her claims. However, conclusory allegations of fraud, supported only by references to cross-outs, inter-lineations, signature comparisons, and conjectural theories, without more, are simply not enough to halt the foreclosure process – again, when recognizing the undisputed fact that Plaintiff is (and has been for several years) in default.  *See, e.g.*, *Cerecedes v. U.S. Bankcorp*, 2011 WL 2711071, *5 (C.D. Cal. 2011) (in dismissing plaintiffs' second amended complaint with prejudice, commenting that "[t]he Court is mindful of the reports of financial institutions using so-called 'robo-signers' to improperly sign documents used in the foreclosure process.  However, Rule 9(b) and *Twombly* require plaintiffs to set forth more than bare allegations of 'robo-signing' without any other factual support.  Perhaps more importantly, plaintiffs do not dispute that they defaulted on their loan or that they received the notices required by [state law].") (internal citations omitted) (unpublished) (citing *Orzoff v. Bank of America, N.A.*, 2011 WL 1539897, *2-3 (D. Nev. 2011) (holding that plaintiff failed to state a claim that trustee breached its duty by "robosigning" documents related to plaintiff's loan where plaintiff did not dispute that she defaulted on her mortgage or that she received required notices.); *Bucy v. Aurora Loan Servs., LLC*, 2011 WL 1044045, *6 (S.D. Ohio 2011) (plaintiff failed to state a claim for fraud based on purported "robo-signing" where "Plaintiff d[id] not dispute the accuracy of any of the salient facts, such as the amount owed or the amount in default.")).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 24**

fully briefed, nothing in the record suggests that Plaintiff is not still the Property's owner-of-record.  As a result, Plaintiff's injury is unclear.  Even assuming Plaintiff's injury, it is difficult to see how Defendants' alleged racketeering activity directly caused that injury rather than, for example, her failure to meet her loan obligations.[11]

In light of these shortcomings, it is hereby recommended that Plaintiff's wire fraud and/or civil RICO claim be dismissed.

### E.    Plaintiff's Fraud Claim

Under Idaho law, the elements of fraud are: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.  *See Mannos v. Moss*, 155 P.3d 1166, 1170 (Idaho 2007).  Fraud claims are held to the heightened pleading standard of FRCP 9(b), which requires particular averments regarding each defendant's participation in the alleged fraudulent scheme.  *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1981).  Failure to plead allegations of fraud with the required factual specificity is a sufficient ground for granting a motion to dismiss.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003).

---

[11]  On this point, Justice Souter in *Holmes* opined:

Allowing suits by those injured only indirectly would open the door to "massive and complex damages litigation[, which would] not only burde[n] the courts, but [would] also undermin[e] the effectiveness of treble-damages suits."

*See Holmes*, 503 U.S. at 274 (quoting *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 545 (1983)); *see also Oscar v. University Students Co-Operative Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) ("RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff."); *but cf. H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249 (1989) (rejecting "invitation to invent a rule that RICO's pattern of racketeering concept requires an allegation and proof of an organized crime nexus.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 25**

In support of her fraud claim, Plaintiff alleges that, (1) in submitting different documentation identifying two different creditors (*see* Exs. D-F to Pl.'s Compl. (Docket No. 1, Atts. 4-6)), she was coerced to continue making payments on her debt; and (2) she relied upon Defendants' conduct with respect to refinancing and/or modifying her loan.  *See* Pl.'s Compl., ¶¶ 61, 67, & 74 (Docket No. 1).  Without more, these allegations cannot support a fraud claim against Defendants.

Preliminarily, as Defendants note in their briefing, Plaintiff was already required to make monthly payments on her loan under the terms of the loan documents she voluntarily signed.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 16 (Docket No. 4, Att. 1).  Those same documents entitle Defendants to initiate foreclosure proceedings upon Plaintiff's default.  *See id*.  In other words, Plaintiff has always been responsible for making timely payments on her loan; any notices from Defendants that may have identified different creditors do not change this fact.

In addition, any discussions Plaintiff may have had with Defendants as to refinancing and/or modifying her loan do not nullify Plaintiff's payment obligations.  *See id*. at pp. 16-17 ("In fact, receipt of a modification application does not negate the power of sale.  The Deed of Trust expressly states that acts of forbearance, including those in connection with loan modification, do not waive the Lender's right to enforce its terms."); *see also* Ex. B to Dina Aff. at p. 8 (Docket No. 5, Att. 3) ("Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower . . . shall not operate to release the liability of Borrower . . . .").[12]

---

[12]  Relatedly, Plaintiff's inability to modify their loan terms does not necessarily translate into monetary damages, or any damages at all.  *See Bacon v. Countrywide Bank FSB*, 2012 WL 642658, *6 (D. Idaho 2012) ("However, the Bacons have not identified any term in the Note and

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 26**

Because Plaintiff's allegations of Defendants' misrepresentations cannot form the basis for her fraud claim, coupled, generally, with her failure to allege fraud with the requisite specificity, it is hereby recommended that Plaintiff's fraud claim be dismissed.

**F.      Plaintiff's Breach of Fiduciary Duty Claim**

"In order to establish a claim for breach of fiduciary duty, a plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached."  *Bushi v. Sage Health Care, PLLC*, 203 P.3d 694, 699 (2009) (citation and marks omitted); *see also Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880-81 (9th Cir. 2007) (applying Nevada law). Here, Plaintiff asserts a breach of fiduciary duty claim against BOFA and Northwest.  *See* Pl.'s Compl., ¶¶ 77-88 (Docket No. 1).  These claims are without merit.

First, the relationship between a borrower (in this case, Plaintiff) and the servicing entity for the loan (in this case, BOFA and/or BAC) is not one generally giving rise to fiduciary duties. *See Burton v. Countrywide Bank, FSB*, 2012 WL 976151, *6 (D. Idaho 2012) (citations omitted). It is true that "[a] fiduciary relationship does not depend upon some technical relation created by or defined in law, [and] exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest in one reposing the confidence."  *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 873 P.2d 861, 868 (Idaho 1994) (quoting *Stearns v. Williams*, 240 P.2d 833, 840-41 (Idaho 1952)).  However, "[t]he facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in

Deed of Trust that confers an obligation upon Defendants to modify the terms of the Note and Deed of Trust upon an occurrence of default.  The Bacons were informed, purely and simply, that if they failed to make payments, their property would be sold to satisfy the debt.").

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 27**

his own behalf, but in the interest of the other party." *High Valley Concrete, LLC v. Sargent*, 234 P.3d 747, 752 (Idaho 2010) (quoting *Burwell v. S.C. Nat'l Bank*, 340 S.E.2d 786, 790 (S.C. 1986)).  Here, Plaintiff's Complaint makes no allegations supporting a foundation to believe that BOFA and/or BAC were ever acting with her interests in mind and not on its own behalf, or that of the lender/loan servicer – whichever the case may be.  As such, Plaintiff "fail[s] to allege any facts supporting more than an arms-length, commercial relationship between a borrower and the servicing entity for the loan in which no fiduciary obligations arise." *Burton*, 2012 WL 976151 at *7.

Second, a foreclosure trustee (in this case, Northwest) has no fiduciary duty to the borrower (in this case, Plaintiff), since "a trustee in a non-judicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary." *Id*. at *6 (citations omitted).

For these reasons, Plaintiff's claim for breach of fiduciary duty against BOFA and/or BAC and Northwest is not a claim upon which relief may be granted.  It is therefore recommended that Plaintiff's breach of fiduciary duty claim be dismissed.

## G.    Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim

In Idaho, there is an implied in law covenant of good faith and fair dealing in every contract. *Idaho First Natl. Bank v. Bliss Valley Foods* 824 P.2d 841, 862 (Idaho 1991).  The covenant is breached by "[a]ny action by either party which violates, nullifies or significantly impairs any benefit of the contact," and requires "that the parties perform in good faith the obligations imposed by their agreement." *Id*. at 863.  However, "[t]he implied covenant of good faith and fair dealing arises only regarding terms agreed to by the parties." *Bushi v. Sage Health*

*Care, PLLC*, 203 P.3d 694, 698 (Idaho 2009).  "There is no basis for claiming implied terms

contrary to the express rights contained in the parties' agreement." *Idaho First Natl. Bank*, 824

P.2d at 863.  In other words, the covenant "does not create new duties that are not inherent" in

the parties' agreement.  *Wesco v. Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1080 (Idaho

2010).

Plaintiff has not identified any specific term within either the Note or the Deed of Trust

that Defendants breached by declaring her loan in default.  Instead, Plaintiff argues only that

"BOFA and Northwest have committed unfair and deceptive acts and violated its fiduciary duty

and duty of good faith by noticing and conducting trustee sales while failing to perform statutory

requisites for conducting such sales as contained in the Idaho Deed of Trust Act."  *See* Pl.'s

Compl., ¶ 80 (Docket No. 1) (describing later what those alleged failures are).  Notably, Plaintiff

fails to refer to any contract term breached by either BOFA or Northwest.  As this Court stated in

*Bacon*:

> The Note and Deed of Trust clearly designated that the Bacons were receiving a loan,
> that they had the obligation to repay, and they would be informed where to send their
> payments.  The bacons received the loan proceeds.  Once the Bacons received the
> proceeds, they were required to make monthly payments.  If they failed to do so, the
> Bacons agreed that the property could be sold in satisfaction of the debt.  The Bacons
> were informed further that the Note, together with the Deed of Trust, could be sold
> and that such a sale may result in a change of their Loan Servicer, the entity that
> collected payments.  The Bacons do not make any allegations concerning these
> events, only events concerning the foreclosure notice and impending sale.  Absent
> identification of the contract term allegedly breached, the Bacons have failed to state
> a claim for breach of the covenant of good faith and fair dealing.

*Bacon*, 2012 WL 642658 at *4.

Like *Bacon*, Plaintiff fails to identify any instance where Defendants breached the terms

of the Note or the Deed of Trust – the underlying contracts at issue here.  As a consequence,

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 29**

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing cannot stand and, therefore, it is recommended that the claim be dismissed.

**H.      Plaintiff's Intentional Infliction of Emotional Distress Claim**

Plaintiff alleges that, between March 2010 and now, Defendants knowingly committed fraudulent acts and omissions regarding the Property's title in order to coerce Plaintiff to continue making payments ("possibly to the wrong creditor").  *See* Pl.'s Compl., ¶ 90 (Docket No. 1).  According to Plaintiff, this led to a "constant fear and anxiety of losing a family home" which "adversely affected her emotional state over this time period," thus warranting a claim for intentional infliction of emotional distress against Defendants.  *See id.*

"To prevail on a claim for intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe."  *Mortensen v. Stewart Title Guar. Co.*, 235 P.3d 387, 396 (Idaho 2010) (internal citations omitted).  "To be actionable, the conduct must be so extreme as to 'arouse an average member of the community to resentment against the defendant,' and 'must be more than unreasonable, unkind, or unfair.'"  *Id.* at 397 (citing 86 CJ. S. Torts § 74 (2009) (citations omitted)).

Plaintiff's claim for intentional infliction of emotional distress fails because, as stated earlier in the context of Plaintiff's fraud claim, it is difficult to argue (as she does again) that she was somehow improperly coerced to do something she was already contractually obligated to do.  *See supra*.  Still, more fundamentally, Defendants continuation of the foreclosure process does not amount to the type of extreme or outrageous conduct necessary to state a claim for

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 30**

intentional infliction of emotional distress.  *See Sykes*, 2012 WL 914922, *9 (in foreclosure context, dismissing plaintiff's intentional infliction of emotional distress); *see also* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 20 (Docket No. 4, Att. 1) ("Simply put, Defendants merely exercised legal rights under the Deed of Trust to initiate foreclosure after Plaintiff defaulted and did not engage in 'extreme' or 'outrageous' conduct.").

　　　For this reason, Plaintiff's intentional infliction of emotional distress claim fails and, therefore, it is recommended that the claim be dismissed.

## III. <u>RECOMMENDATION</u>

　　　Based on the foregoing, IT IS HEREBY RECOMMENDED THAT Defendants' Motion to Dismiss Complaint (Docket No. 4) and related Joinder (Docket No. 14) be GRANTED IN PART and DENIED IN PART as follows:

　　　1.　　　As to Plaintiff's declaratory relief claim, it cannot be said as a matter of law that Northwest is a valid trustee here; in this respect, Defendants' Motion to Dismiss (Docket No. 4) and related Joinder (Docket No. 14) should be DENIED.

　　　2.　　　As to Plaintiff's declaratory relief claim, it cannot be said as a matter of law that Defendants properly recorded title and assignment documents in compliance with Idaho's foreclosure statutes; in this respect, Defendants' Motion to Dismiss (Docket No. 4) and related Joinder (Docket No. 14) should be DENIED.

　　　3.　　　With the exception of the above-referenced declaratory relief claims, the remaining claims should be DISMISSED; in this respect, Defendants' Motion to Dismiss (Docket No. 4) and related Joinder (Docket No. 14) should be GRANTED.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 31**

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

## IV.  <u>ORDER</u>

Based upon the foregoing, IT IS HEREBY ORDERED that Defendants' Motion for Judicial Notice in Support of Motion to Dismiss Complaint (Docket No. 5) is GRANTED.



DATED:  **August 15, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 32**